IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FRED A. OSBORN,                           Case No. 6:14-cv-00475-AA
                                               OPINION AND ORDER
              Plaintiff,

        v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

              Defendant.

_____

George J. Wall
Attorney at Law
1336 E. Burnside St., Suite 130
Portland, OR 97214
      Attorney for plaintiff

S. Amanda Marshall
United States Attorney
Ronald K. Silver
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97201-2902

Heather L. Griffith
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104
      Attorneys for defendant

AIKEN, Chief Judge:

      Plaintiff Fred A. Osborn brings this action pursuant to the

Page 1 - OPINION AND ORDER

Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for immediate payment of benefits.

## PROCEDURAL BACKGROUND

Plaintiff filed his application for DIB on April 23, 2007. Tr. 140. After the application was denied initially and upon reconsideration, the plaintiff timely requested a hearing before the Honorable John J. Madden, Jr. ("ALJ"). Tr. 91-92. On June 3, 2009, an ALJ hearing was held. Tr. 25-79. The ALJ, on July 22, 2009, issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 14-22. After the Appeals Council declined review, plaintiff filed a complaint in this court. Tr. 1-3. On January 25, 2012, United States Magistrate Judge John Jelderks issued a Findings and Recommendation which recommended the case be reversed and remanded to an ALJ. Tr. 444-69. United States District Judge Michael Mosman adopted the Findings and Recommendation, and reversed and remanded the case by order. Tr. 441-44.

A second ALJ hearing was held before Judge Madden on December 6, 2012. Tr. 394-426. On January 25, 2013, the ALJ issued a decision finding plaintiff not disabled under the Act.

Page 2 - OPINION AND ORDER

Tr. 372-86. The Appeals Council once again declined review, and plaintiff returned to this court. Tr. 342-46.

## STATEMENT OF FACTS

Born on July 18, 1951, plaintiff was 48 years old on the alleged onset date of disability, 51 years old at his date last insured, and 61 years old at the date of the second hearing. Tr. 140, 202, 395. Plaintiff attained a GED. Tr. 157. He has previous work experience as a truck driver and caterer helper. Tr. 383. Plaintiff alleges disability beginning on May 29, 1999 due to low back pain and a left hand impairment. Tr. 151, 202.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 1484, 1486 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the plaintiff to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the Commissioner determines whether a plaintiff is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 416.920(b). If so, the plaintiff is not disabled.

At step two, the Commissioner determines whether the plaintiff has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c).

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(d). If so, plaintiff is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner determines whether the

plaintiff can still perform "past relevant work." 20 C.F.R. §
416.920(e). If the plaintiff can work, he is not disabled. If he
cannot perform past relevant work, the burden shifts to the
Commissioner. At step five, the Commissioner must establish that
plaintiff can perform other work that exists in the national
economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 416.920(e) &
(f). If the Commissioner meets this burden, the plaintiff is not
disabled. 20 C.F.R. § 416.966.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process,
the ALJ found that plaintiff had not engaged in substantial
gainful activity from the application date through his date last
insured. Tr. 374. At step two, the ALJ determined that plaintiff
had the following severe impairments: "degenerative disc disease
of the lower spine and remote left hand injury." Tr. 375. At step
three, the ALJ found plaintiff's impairment did not meet or equal
the requirements of a listed impairment. Id.

Because plaintiff did not establish disability at step
three, the ALJ continued to evaluate how plaintiff's impairments
affected his ability to work. The ALJ resolved that plaintiff had
the residual functional capacity ("RFC") to perform a limited
range of light work in that he could lift, carry, push, and pull
20 pounds occasionally and 10 pounds frequently; stand and walk
six hours of an eight-hour workday and sit for six hours of an

Page 5 - OPINION AND ORDER

eight-hour workday; occasionally climb ladders, ropes, and
scaffolds; frequently climb ramps and stairs; occasionally stoop;
and frequently kneel, crouch, and crawl. Id. At step four, the
ALJ found plaintiff had no past relevant work. Tr. 383. At step
five, the ALJ determined that jobs existed in significant numbers
in the national and local economy that plaintiff could perform
despite his impairments. Tr. 384-86. Accordingly, the ALJ
concluded that plaintiff was not disabled under the Act. Id. at
386.

## DISCUSSION

Plaintiff alleges that the ALJ erred by: (1) failing to
adopt the opinion of treating physician Dr. Belza; (2) omitting
left hand restrictions from the RFC; and (3) not finding
plaintiff presumptively disabled pursuant to Vocational Rule
201.14.

As a threshold matter, plaintiff submitted new evidence to
the Appeals Council following the ALJ's second decision of
January 15, 2013. Tr. 343, 362-63. On review, this court has a
duty to consider the entire record before it, including new
evidence submitted to the Appeals Council and made part of the
overall administrative record. "When the Appeals Council
considers new evidence in deciding whether to review a decision
of the ALJ, that evidence becomes part of the administrative
record, which the district court must consider when reviewing the

Commissioner's final decision for substantial evidence." <u>Brewes</u>
<u>v. Commissioner of Social Sec. Admin.</u>, 682 F.3d 1157, 1162-63
(9th Cir. 2012); <u>see also</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094,
1097-98 (9th Cir. 1999)(a court reviewing the Commissioner's
decision must consider the record as a whole).

I. <u>Dr. Belza's Opinion</u>

Plaintiff contends the ALJ failed to provide clear and
convincing reasons, supported by substantial evidence, to reject
the opinion of treating physician Dr. Belza. Pl.'s Opening Br. 5-
7. Defendant counters that the ALJ provided sufficient reasons to
discount the opinion. Def.'s Br. 4-13.

In the Ninth Circuit, an ALJ must state clear and convincing
reasons for rejecting the uncontradicted opinion of a treating or
examining doctor, or specific and legitimate reasons, supported
by substantial evidence, for rejecting a contradicted opinion.
<u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005). While
disability opinions are reserved for the Commissioner, reasons
for rejecting a treating doctor's opinion on the ultimate issue
of disability are comparable to those required for rejecting a
treating physician's medical opinions. <u>Holohan v. Massanari</u>, 246
F.3d 1195, 1202-03 (9th Cir. 2001) (citing <u>Reddick v. Chater</u>, 157
F.3d 715, 725 (9th Cir. 1998)). While defendant argues the
specific and legitimate standard applies, defendant failed to

provide a cogent argument on the issue.[1]

On June 4, 2009, seven years after plaintiff's date last insured, Dr. Belza submitted a letter to plaintiff's attorney. Tr. 320. In it, the doctor noted exertional limitations and noted plaintiff's "pain is chronic and severe and I anticipate that [plaintiff] would not be able to work a schedule that required him to attend eight hours per day, five days per week." Tr. 320. The ALJ, however, explained he was "unable to give weight to Dr. Belza's opinion concerning inability to sustain work." Tr. 382. In support of his finding, the ALJ reasoned that Dr. Belza had only irregular contact with plaintiff throughout the relevant time period, his opinion contradicted his own treatment notes, and his opinion was internally inconsistent in assessing a 2009

---

[1] Defendant argues that "the opinions of treating physician Dr. Kiley and examining physician Dr. Hamby were contradicted by the opinions of the State agency physicians, and thus the 'specific and legitimate' standard applies." Def.'s Br. 5 (internal citations omitted). However, the court is unable to locate any reference to either a Dr. Kiley or Dr. Hamby on this record. Further, while the ALJ discussed the opinions of State agency physicians in his first decision dated July 22, 2009, he did not mention them in the second decision dated January 25, 2013. Compare Tr. 14-22 with 372-86. This court cannot affirm the agency's decision on a ground not invoked by the agency in making its decision. SEC v. Chenery Corp., 332 U.S. 194, 196 (1947). "If the Commissioner's contention invites this court to affirm the denial of benefits on a ground not invoked by the Commissioner in denying the benefits originally, then we must decline." Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001). Accordingly, Dr. Belza's opinion stands uncontradicted by accepted medical sources, and thus the "clear and convincing" standard applies. Bayliss, 427 F.3d at 1216. However, the court further notes that the outcome would be the same even if the "specific and legitimate" standard was employed.

physical capacity evaluation ("PCE"). Tr. 314-16, 320, 381-82.

Dr. Belza was plaintiff's primary treating physician during the period in question, from May 1999 until 2002. As the ALJ summarized, the doctor "saw [plaintiff] about 14 times during the period at issue . . . ." Tr. 381. Nevertheless, the ALJ found that contact with the doctor was "not regular," and concluded that the schedule "may suggest the spinal impairment was not as limiting as alleged, particularly because the only modality [plaintiff] pursued was surgery." Tr. 382. Defendant argues that Dr. Belza's opinion is entitled to diminished weight, citing 20 C.F.R. § 404.1527(c)(2)(i), which holds that the longer a treating source has treated plaintiff, and the more times the treating source actually treated plaintiff during the relevant period, the more weight the source's opinion will be afforded. Id.

Here, Dr. Belza was the most frequent treating source, and as the ALJ summarized, had a longitudinal history with plaintiff beginning in 1994, until at least 2009. Tr. 376-81. Furthermore, there is substantial evidence that plaintiff was uninsured during the time between his date last insured and his return to Dr. Belza in 2009. Tr. 494-95. Failure to seek treatment is not an appropriate basis to undermine pain complaints where a plaintiff has a good reason, such as financial barriers. Orn v. Astrue, 495 F.3d 625, 638 (9th Cr. 2007).

Conservative treatment can also be a reason to discount a plaintiff's complaints of severe pain, but again, such fact is not a proper basis for rejecting a plaintiff's credibility if he offers a good rationale. Carmickle v. Comm'r, Social Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008). The record reflects, however, that plaintiff did not normally take powerful medication because he felt it was ineffective. See, e.g., Tr. 216 ("NP [herniated nucleus pulposis] on the left at L5-S1 recalcitrant to conservative treatment . . ."); Tr. 225 (chart note reports "Vioxx" provided only 30% relief); Tr. 231 (plaintiff underwent steroid injection and epidural nerve block without significant relief); Tr. 234 (plaintiff reports medications and physical therapy had not been helpful in the past). Moreover, plaintiff, frustrated with continuing symptoms in 2004, agreed to a third lumbar surgery, although it was ultimately not performed due to lack of insurance coverage. Tr. 220, 320. Plaintiff's intention to undergo spinal surgery is a significant indication he was experiencing back pain. Thus, the ALJ's rationale was not legally sufficient.

The ALJ also found Dr. Belza's 2009 assertion that plaintiff's condition had been the same since 1999 inconsistent with the medical record. Tr. 382. The ALJ explained that "in contrast to the way [plaintiff] moved during the April 2009 appointment ('hobbles around the room stiffly' and 'does not have

normal gait'), closest [sic] to the date last insured,
[plaintiff's] gait was normal." Tr. 382. The import of the
comparison is questionable, however, as the ALJ found that
plaintiff had the severe impairments of degenerative disc disease
of the lumbar spine. Tr. 375. Indeed, as defendant pointed out,
"one would expect[,] with a condition like degenerative disc
disease" that plaintiff would worsen over time. Def.'s Br. 8.
However, the fact that plaintiff experienced symptom worsening
does not necessarily establish that plaintiff was not previously
disabled.

The ALJ found, and defendant argues, plaintiff's worsening
condition impugned Dr. Belza's credibility based on the doctor's
statements. Tr. 382, Def.'s Br. 8-9. Specifically, Dr. Belza, in
2009, opined that plaintiff's "condition ha[d] not changed
significantly since at least May of 1999, and his present
restrictions ha[d] been the same ever since." Tr. 320 (emphasis
added). The court recognizes that different doctors reported
varying observations of plaintiff's gait throughout the relevant
time period and thereafter. See Tr. 220 (gait was stable in July
2004, though range of motion ("ROM") was limited), 223 ("range of
motion of the back was limited due to pain and stiffness but
moves fairly well once up and about" in January 2004), 230 (gait
was normal in January 2003), 235 (gait was with left antalgia in
September 2002), 210 (plaintiff ambulated with left antalgia in

July 2002) 249 (gait was stable without ataxia, but mildly antalgic due to compensatory limp in March 2002), 317 ("abnormal" gait in April 2009). However, even though Dr. Belza noted plaintiff's gait was "stable" in 2004, he also reported plaintiff had limited back ROM due to pain, and that he merely "move[d] okay" once he was up. Tr. 220. Moreover, the Act explains that symptoms will be expected to change over time, and the fact that a plaintiff has good and bad days is not dispositive of a disability. See SSR 96-7p, available at 1996 WL 374184, *5 ("Symptoms may vary in intensity, presence, and functional effects, or may worsen or improve with time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms."). Therefore, the fact that plaintiff's gait had worsened over time is not a clear and convincing reason to discredit Dr. Belza's opinion that plaintiff's degenerative condition had not significantly changed overall. Tr. 320.

The ALJ also found not credible Dr. Belza's 2009 comment that plaintiff had not significantly changed since May 1999 because plaintiff did not have right leg symptoms in November 2002, and did not report right leg symptoms to the doctor until 2009. Tr. 382. Similarly, defendant argues that through the end of the relevant time period, plaintiff "specifically denied having any symptoms in his right leg." Def.'s Br. 8. However,

review of the record reveals this is not entirely accurate – for example, in September 2002, while plaintiff had "marked" discomfort in the left leg, he also had a "lesser degree of discomfort on the right." Tr. 234, see also Tr. 235 ("left lower extremity greater than right lower extremity complaints"). In December 1999, plaintiff had "numbness and tingling down the legs" and "more difficulty" with right-sided knee bends than left. Tr. 256. Further, while outside of the relevant time period, Dr. Yundt diagnosed "bilateral lumbar radiculopathy" as early as February 2003. Tr. 229. Thus, plaintiff's description of bilateral numbness and tingling April 2009 was not inconsistent with his symptoms from the relevant time period. Tr. 317. Defendant's argument lacks merit, and the ALJ's reasoning is not based on substantial evidence.

The ALJ additionally found that Dr. Belza's statement that plaintiff had not significantly changed was belied by "the nature of the lower extremity complaints [that] changed several times. . . in terms of whether it was anterior or posterior, implicating different levels of the spine." Tr. 382. The record reflects that plaintiff reported various locations of pain/tingling/numbness throughout the relevant time period. Tr. 377-80. Nonetheless, the ALJ did not provide any explanation of how the symptom variations affected Dr. Belza's credibility. Tr. 382. Dr. Belza merely stated that plaintiff's condition had not significantly changed.

Tr. 320. Overall, the record clearly reflects a pattern of back pain and predominantly left-sided radiculopathy over the relevant time period and beyond. Further, while defendant mentioned the ALJ "discussed how the nature of [p]laintiff's complaints about his leg changed several times," defendant did not provide any further argument or rationale. Consequently, the ALJ's reason for discounting Dr. Belza's opinion is not legally or factually sufficient.

In addition, the ALJ found Dr. Belza not credible because the doctor "regularly released [plaintiff] to light or light to medium duty work," during the relevant time period, although he indicated in 2009 that plaintiff could not return to work and "although not totally disabled, [plaintiff was] significantly impaired in terms of his ability to carry on a meaningful job." Tr. 318, 382. Dr. Belza further indicated plaintiff would "not be able to work a schedule that required him to attend eight hours per day, five days per week, and that he would miss work because of his condition more than two days in any given month." Tr. 320.

Plaintiff argues that because Dr. Belza's work releases were made in the context of an Oregon workers' compensation claim, the ALJ erred by equating light to medium "duty" to the Department of Occupation Titles's definitions of light to medium "work." Pl.'s Opening Br. 6-7, Pl.'s Reply Br. 2. Plaintiff asserts that pursuant to Oregon workers' compensation law, individuals are

Page 14 - OPINION AND ORDER

commonly "offered modified light duty jobs," which include "part-time work, work on [a plaintiff's] own schedule, or employer-provided light duty accommodating his restrictions," whereas the Act defines disability when a plaintiff cannot sustain full-time work. Pl.'s Opening Br. 2.

When this matter was initially before this court in 2012, Magistrate Judge Jelderks recognized the difference and found that Dr. Belza had specified light or medium duty in his work releases, which should not be equated with light or medium work under 20 C.F.R. § 404.1567(b)-(c). Tr. 461; see Osborn v. Astrue, 2012 WL 590843, *10 (D.Or. January 25, 2012). Plaintiff argues that Judge Jelderks's finding established the "law of the case" on the issue, and I agree. Pl.'s Reply Br. 2.

For a prior ruling to become the law of the case, "the issue in question must have been decided explicitly or by necessary implication in the previous disposition." Herrington v. County of Sonoma, 12 F.3d 901, 904 (9th Cir. 1993)(quoting Milgard Tempering, Inc. v. Selas Corp. of America, 902 F.2d 703, 715 (9th Cir. 1990))(alteration omitted). While the Ninth Circuit has yet to address the law of the case doctrine specifically in a Social Security context, other circuits have found the doctrine applies to district court determinations made by judicial review of Social Security decisions. See, e.g., Brachtel v. Apfel, 132 F.3d 417, 419-20 (8th Cir. 1997) (law of the case doctrine applies to

administrative agencies on remand and thus, if district court found that plaintiff needed to lie down, ALJ is bound by that finding on remand); Wilder v. Apfel, 153 F.3d 799, 803 (7th Cir. 1998) (law of the case doctrine "requires the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart."). Further, this court, and other district courts within the Ninth Circuit have previously adopted the doctrine in similar circumstances. See, e.g., Ball v. Astrue, 2010 WL 3420166, *4-5 (D.Or. August 27, 2010)(unpublished opinion); Ischay v. Barnhart, 383 F.Supp.2d 1199, 1217-18 (C.D.Cal. 2005); Al-Mirzah v. Colvin, 2015 WL 457800, *7 (W.D.Wash. February 3, 2015). The Ninth Circuit has identified five circumstances under which a court may have discretion to depart from the law of the case: 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result. United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997).

In his second decision, the ALJ asserted that plaintiff's argument that Dr. Belza's references to light work "were based on definitions of some unspecified workers [sic] compensation definitions" was incorrect. Tr. 381. Similarly, defendant

contends that Dr. Belza's 2009 opinion that plaintiff was
disabled by his inability to work full time is inconsistent with
his prior work releases. Def.'s Br. 7. However, none of the
exceptions to the law of the case doctrine are applicable here,
and therefore I adopt Judge Jelderks's finding that the light to
medium duty work terminology of Dr. Belza's work releases is not
the equivalent of the light to medium work definition employed by
the Act. See Desrosiers v. Secretary of Health & Human Serv., 846
F.2d 573, 576 (9th Cir. 1988) (California workers' compensation
guidelines for work capacity are not conclusive in a Social
Security case).

The ALJ alternatively explained that even though Dr. Belza
did not explain the "specifics" of his work releases, the fact
that Dr. Belza released plaintiff to work at all suggested Dr.
Belza believed plaintiff could perform some work. Tr. 382.
Indeed, Dr. Belza released plaintiff to "sedentary/light duty" in
July 1999, "light duty" in April 2000, "light to medium duty" in
August 2001, and "sedentary/light duty" in October 2003. Tr. 227,
228, 252, 259. In July and March of 2004, Dr. Belza listed
plaintiff's work status as "not applicable." Tr. 221, 222.
Considering that plaintiff was not working (as his employer
apparently did not offer him a modified duty position), it is not
surprising that Dr. Belza did not include any further explanation
beyond stating that plaintiff could perform

sedentary/light/medium duty. However, it does not follow that
because Dr. Belza believed plaintiff could perform some level of
limited or modified-duty work, that he was therefore able to work
a full-time schedule consisting of five eight-hour days.
Accordingly, Dr. Belza's work releases, formulated in the context
of a workers' compensation procedure, are not necessarily
inconsistent with his later statement that plaintiff could likely
not maintain a full-time job. Tr. 320. The ALJ's rationale was,
therefore, legally deficient.

The ALJ's final reason for discrediting Dr. Belza's opinion
was that it was "internally inconsistent," explaining that Dr.
Belza "first affirmed the findings of the PCE and state[d] it
appeared to be valid," while proceeding to opine plaintiff was
unable to work full time, or at a light level. Tr. 382. As the
ALJ summarized in his decision, Matt Kirchoff, PT, DPT performed
a PCE evaluation on May 18, 2009. Tr. 314-16, 380-81. Mr.
Kirchoff indicated plaintiff was capable of "[l]ight work
projected over the eight hour work day." Tr. 314. However,
despite his conclusion, Mr. Kirchoff's specific findings
reflected less than a light range in lifting and carrying:
lifting 8.75 pounds frequently and 17.5 pounds occasionally from
floor to waist; lifting 7 pounds frequently and 14 pounds
occasionally from waist to eye-level; two-handed carrying 8.75
pounds frequently and 17.5 pounds occasionally; and one-handed

Page 18 - OPINION AND ORDER

carrying 4.25 pounds frequently and 8.5 pounds occasionally. Tr. 316.[2] Also, while Mr. Kirchoff indicated plaintiff could stand 4-6 hours per day, he equivocally found plaintiff could stand only occasionally, up to 1/3 of a day.[3] Compare Tr. 315 with Tr. 316. Thus, it appears the PCE itself was internally inconsistent.

Although Dr. Belza stated in his June 4, 2009 letter that he believed the PCE was valid, he focused his agreement on the specific lifting and conservative standing restrictions outlined in the PCE, rather than Mr. Kirchoff's general conclusion that plaintiff could perform light work. Tr. 320. Thus, it appears the doctor was essentially addressing the validity of the chart on tr. 316. Dr. Belza did not adopt the PCE's light work classification, and explained that he did not believe plaintiff could maintain a regular work schedule.[4] Tr. 320. While defendant

---

[2] The Act defines light level work, in part, as the ability to lift no more than 20 pounds [occasionally], and frequently lifting or carrying objects of up to 10 pounds. 20 C.F.R. § 404.1567(b). "Occasionally" is defined as up to 1/3 of a workday (4 hours), while "frequently" is defined as 1/3 to 2/3 of a workday (4-6 hours). Dictionary of Occupational Titles, Appendix C, 4th Ed.

[3] "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, available at 1983 WL 31251, *6.

[4] The court notes Dr. Belza's conclusion that plaintiff would miss work more than two times per month due to his condition. Tr. 320. However, while such absenteeism would essentially preclude any work, Dr. Belza did not provide any more than a conclusory statement in support of his opinion. As such, the court does not

Page 19 - OPINION AND ORDER

maintains that the PCE determined plaintiff was able to perform light work according to the U.S. Department of Labor standards, defendant ignores the fact that the PCE's specific findings warranted less than a light level of work under those very standards. Def.'s Br. 9-10. Accordingly, although Dr. Belza did not adopt the PCE's conclusion (presumably because it was inconsistent with the findings), the doctor's opinion is not internally inconsistent, as he adopted the specific findings which he felt were valid.[5] Tr. 320. Thus, the alleged inconsistency rationale was not legally sufficient. Tr. 382.

In sum, although the ALJ summarized plaintiff's treatment by Dr. Belza and others over the years, and offered several reasons for discrediting his medical opinions, the ALJ's arguments do not withstand scrutiny, and do not rise to the clear and convincing (or specific and legitimate) legal threshold. Accordingly, Dr. Belza's exertional restrictions as set forth in his June 4, 2009 statement should be entitled to great weight. 20 § C.F.R. 404.1527(c)(2); Tr. 320.

---

find Dr. Belza's absenteeism conclusion alone determinative of plaintiff's disabled status. See Batson, 359 F.3d at 1195 (opinions that are brief, conclusory, or not supported by clinical findings are not persuasive).

[5] As a treating physician, Dr. Belza's opinion is generally entitled to greater deference than that of Mr. Kirchoff, a non-treating, "non-acceptable" medical source. Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012); 20 C.F.R. § 404.1527(d); SSR 06-03p, available at 2006 WL 2329939.

II. RFC Determination

Plaintiff contends the ALJ erred by failing to include left hand restrictions in his RFC. Pl.'s Opening Br. 7. According to plaintiff, the ALJ purported to give "great weight" to Mr. Kirchoff's hand assessment, but did not properly incorporate the assessment's findings. Id., Tr. 383. Defendant contends the hand limitations were properly incorporated by the ALJ's RFC. Def.'s Br. 13. The ALJ did not provide any explicit limitation regarding plaintiff's left hand in his RFC.[6] Tr. 383.

Mr. Kirchoff submitted an addendum to his PCE report on May 18, 2009. Tr. 319. The addendum indicated plaintiff had a 36 percent decrease in grip strength; his grip strength placed him below the 10th percentile for grip for his age/sex; his ability to sort nuts, bolts and screws -- gross motor functions -- did not appear to be affected by his left hand impairment; he "may only be able to use [his left] hand intermittently for lifting/carrying tasks that require prolonged grasping;" and his "light work tolerance projection" was nonetheless accurate. Id.

---

[6] The court notes that the ALJ's original RFC from his July 22, 2009 decision explicitly included a limitation precluding "fine manipulation with [plaintiff's] left hand." Tr. 17. Considering that the medical evidence regarding plaintiff's left hand did not substantially change between the ALJ's first and second decision, the court cannot explain why the ALJ declined to include a left hand limitation in his more recent RFC, despite the fact that both RFC's were based on a virtually identical record.

Page 21 - OPINION AND ORDER

While the PCE delineated plaintiff's ability to lift and carry in terms of maximum weight, it did not provide information regarding frequency. <u>See</u> Tr. 316. The record contains no contrary evidence regarding the left hand. Thus, plaintiff argues, and I agree, that Mr. Kirchoff concluded plaintiff was limited to only occasional grasping. Pl.'s Opening Br. 7; Tr. 319. Defendant responds that even if the ALJ should have included a limitation of only occasional grasping, any error was harmless so long as the ALJ was able to identify occupations that the plaintiff could nonetheless perform. Def.'s Br. 14; <u>Molina</u>, 674 F.3d at 1115. However, for the reasons explained in the following sections, the error was not harmless.

III. <u>Step Five Analysis</u>

At step five, the ALJ identified a number of occupations in the local and national economy that plaintiff's RFC would allow. Tr. 385. Initially, these included cashier II, packing line worker, counter person, small products assembler, and garment sorter. <u>Id.</u> However, when factoring in evidence submitted after the first hearing and not considered by the Appeals Council or this court, the ALJ indicated plaintiff's limitations in reading, spelling, and math would dramatically erode the number of cashier and counter person jobs. Tr. 385, 588-92. When considering the additional restrictions set forth by Dr. Belza (aside from absenteeism), the ALJ noted the cashier and packing line jobs

would be further eroded, and the counter person job eliminated. Tr. 385-86. Although not discussed in the decision, the VE also indicated that with a limitation of no more than occasional grasping with the left hand, only the jobs of cashier and counter person would remain. Tr. 417. Accordingly, as the counter person job was precluded by Dr. Belza's limitations, the only viable job identified by the VE fitting the limitations of both Dr. Belza and Mr. Kirchoff was cashier II.[7] See id., Tr. 419.

As mentioned earlier, after the hearing, plaintiff submitted the report of a second vocational expert, Thomas Weiford, CRC. Tr. 362-63. Mr. Weiford's testimony was reviewed by the Appeals Council, and thus became part of the administrative record and subject to the review of this court. Tr. 343; Brewes, 682 F.3d at 1163.

Mr. Weiford's written testimony indicated he had reviewed the file and concluded that the VE had erroneously found plaintiff capable of performing the cashier II job. Tr. 362. Specifically, Mr. Weiford opined that "an individual would not be

---

[7] Defendant argues that even if plaintiff is unable to perform work as a cashier II, any error was harmless as the ALJ identified other jobs plaintiff could perform. Def.'s Br. 17-18. The argument fails for two reasons. First, to the extent plaintiff is unable to perform the cashier II job because of certain limitations, those limitations would similarly preclude the other jobs identified by the ALJ. Second, based on the VE testimony, and correctly incorporating Dr. Belza's RFC and Mr. Kirchoff's hand restrictions, plaintiff is unable to perform the other jobs identified by the ALJ. Tr. 416-19.

Page 23 - OPINION AND ORDER

able to work successfully as a cashier if their non-dominant arm
and hand [was] restricted to occasional grasping and handling."
Tr. 363. Mr. Weiford further opined that plaintiff's standing
limitation would erode the overall cashier position numbers far
more significantly than represented by the VE at the hearing.[8]
Id.

Though the Appeals Council recognized Mr. Weiford's report,
it did not make any findings based on the report, nor did it
choose to remand the matter to an ALJ to resolve the conflict
between the vocational experts. Tr. 343. Rather, the Appeals
Counsel only noted the ALJ "explained why he did not include any
manipulative limitations" in the RFC. Id. As discussed above, the
ALJ's failure to include the limitation of occasional grasping
was erroneous based on Mr. Kirchoff's uncontradicted PCE
findings. Tr. 319.

Plaintiff contends that Mr. Weiford's conclusions should be
given credence over those provided by the VE at hearing because
they are "based on a more current Department of Labor
publication, O*NET," his experience, and "actual labor market

_____

[8] At hearing, the VE answered that an occasional standing
limitation would reduce the national cashiering positions by one-
quarter, from 1 million to 250,000. Tr. 416. Considering
plaintiff's educational limitations, the 250,000 would be reduced
by one-quarter once more, leaving 62,500 nationally. Tr. 411;
419. Mr. Weiford opined that an occasional standing limitation
would reduce the national cashiering positions by 95%. Tr. 363.
Based on the 1 million base figure, Mr. Weiford's estimate would
result in only 12,500 positions.

Page 24 - OPINION AND ORDER

surveys of Cashier II positions." Pl.'s Opening Br. 8. Defendant counters that regardless of Mr. Weiford's report, substantial evidence supports the ALJ's conclusion, and that "an ALJ may take administrative notice of any reliable job information, including information provided by a VE." Def.'s Br. 17 (quoting Bayliss, 427 F.3d at 1218). Defendant's citation to Bayliss is inapposite, as it addresses an ALJ's discretion to omit limitations which are not supported by the medical evidence. Id. To the extent Mr. Weiford's vocational report directly contradicts the job requirement information provided by the VE's testimony, substantial evidence does not support a conclusion based only upon the VE's contradicted opinion. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Desrosiers, 846 F.2d at 576.

Given conflicting vocational testimony, the proper recourse would normally be to remand this case so an ALJ could evaluate Mr. Weiford's report in light of the entire record, and determine if plaintiff could perform the cashier II job. However, because this case can be determined on other grounds, as explained in the following section, further proceedings are not necessary.

IV. The Grids

Plaintiff argues that the ALJ should have addressed whether plaintiff qualified as disabled under the Act's Medical-Vocational Guidelines ("the Grids"). 20 C.F.R. Part 404, Subpt.

P, App. 2. Defendant contends that an ALJ may appropriately satisfy the Commissioner's burden of production by choosing to call a VE rather than referencing the Grids. Def.'s Br. 15. Defendant's assertion, however, is not entirely accurate: when a plaintiff has both exertional and nonexertional impairments, an ALJ must consult the grids first. Lounsburry v. Barnhart, 468 F.3d 1111, 1115 (9th Cir. 2006)(citing Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989)). Further, "where application of the [G]rids directs a finding of disability, that finding must be accepted by the [Commissioner] ... whether the impairment is exertional or results from a combination of exertional and nonexertional limitations." Cooper, 468 F.2d at 1157. Defendant is correct in stating that where a plaintiff's combination of exertional limitations put him in-between two levels, SSR 83-12 mandates calling a VE to identify any appropriate jobs. Def.'s Br. 15-16; Moore v. Apfel, 216 F.3d 864, 870 (9th Cir. 2000). However, the stated purpose of SSR 83-12 is to provide "a framework for adjudicating claims in which an individual has only exertional limitations, and no specific rule applies . . ." SSR 83-12, available at 1983 WL 31253, *1 (emphasis added). Had the ALJ correctly credited the lifting and standing restrictions imposed by Dr. Belza and the grasping restriction imposed by Mr. Kirchoff, the result would have been an RFC with exertional limitations of less than light work in terms of lifting and

carrying, only occasional standing, and a nonexertional

limitation of only occasional grasping with the left hand. As

such, plaintiff has both exertional and nonexertional

limitations, and SSR 83-12 is not applicable.

The SSA defines and explains sedentary work as:

[I]nvolving lifting no more than 10 pounds at a time and
occasionally lifting or carrying articles like docket files,
ledgers, and small tools. Although sitting is involved, a
certain amount of walking and standing is often necessary in
carrying out job duties. Jobs are sedentary if walking and
standing are required occasionally and other sedentary
criteria are met. By its very nature, work performed
primarily in a seated position entails no significant
stooping. Most unskilled sedentary jobs require good use of
the hands and fingers for repetitive hand-finger actions.

"Occasionally" means occurring from very little up to
one-third of the time. Since being on one's feet is required
"occasionally" at the sedentary level of exertion, periods
of standing or walking should generally total no more than
about 2 hours of an 8-hour workday, and sitting should
generally total approximately 6 hours of an 8-hour workday.
Work processes in specific jobs will dictate how often and
how long a person will need to be on his or her feet to
obtain or return small articles.

SSR 83-10, available at 1983 WL 31251, *5. Meanwhile, light work

is defined and explained as:

[L]ifting no more than 20 pounds at a time with frequent
lifting or carrying of objects weighing up to 10 pounds.
Even though the weight lifted in a particular light job may
be very little, a job is in this category when it requires a
good deal of walking or standing — the primary difference
between sedentary and most light jobs. A job is also in this
category when it involves sitting most of the time but with
some pushing and pulling of arm-hand or leg-foot controls,
which require greater exertion than in sedentary work; e.g.,
mattress sewing machine operator, motor-grader operator, and
road-roller operator (skilled and semiskilled jobs in these
particular instances). Relatively few unskilled light jobs
are performed in a seated position.

> "Frequent" means occurring from one-third to two-thirds of
> the time. Since frequent lifting or carrying requires being
> on one's feet up to two-thirds of a workday, the full range
> of light work requires standing or walking, off and on, for
> a total of approximately 6 hours of an 8-hour workday.
> Sitting may occur intermittently during the remaining time.
> The lifting requirement for the majority of light jobs can
> be accomplished with occasional, rather than frequent,
> stooping. Many unskilled light jobs are performed primarily
> in one location, with the ability to stand being more
> critical than the ability to walk. They require use of arms
> and hands to grasp and to hold and turn objects, and they
> generally do not require use of the fingers for fine
> activities to the extent required in much sedentary work.

Id., *5-6.

The Act defines "exertional" activity as primarily involving

the strength requirements of sitting, standing, walking, lifting,

carrying, pushing, and pulling. Id., *6. The lifting and carrying

limitations proposed by Dr. Belza place plaintiff in-between the

light and sedentary categories. Id., *5-6. Further, Dr. Belza's

standing limitation situates plaintiff in the sedentary category.

Id.,*5. Also, plaintiff's occasional grasping impairment is an

additional nonexertional factor, which places him closer to the

sedentary range, as light work generally "require[s] the use of

hands to grasp and to hold . . . ." Id.,*5-6. Thus, on balance,

the ALJ should have determined that plaintiff's exertional and

nonexertional impairments resulted in a sedentary category

overall.

During the relevant time period, plaintiff was an individual

approaching advanced age (50-54) under the Grid, as he turned 50

more than a year before his date last insured. Tr. 374. The ALJ
and VE established at the second hearing that plaintiff had no
transferable job skills. Tr. 413. Under the Act,

> Individuals approaching advanced age (age 50-54) may be
> significantly limited in vocational adaptability if they are
> restricted to sedentary work. When such individuals have no
> past work experience or can no longer perform vocationally
> relevant past work and have no transferable skills, a
> finding of disabled ordinarily obtains. However, recently
> completed education which provides for direct entry into
> sedentary work will preclude such a finding. For this age
> group, even a high school education or more (ordinarily
> completed in the remote past) would have little impact for
> effecting a vocational adjustment unless relevant work
> experience reflects use of such education.

20 C.F.R. Part 404, Subpt. P, App. 2, Rule 200.000(g). Plaintiff
does not have any recently completed education that would provide
direct entry into sedentary work. While there is some contention
about whether plaintiff completed high school, either educational
level renders a disabled finding for a person closely approaching
advanced age under the Grids. Id. at Rule 201.10, 201.14.
Accordingly, if Dr. Belza's RFC and plaintiff's hand limitation
was properly credited, the Grids would have rendered a finding of
disabled.

V. Remand

    The ALJ erred in discounting Dr. Belza's RFC determination,
as well as the grasping limitations set forth by Mr. Kirchoff.
Further, new evidence submitted post-hearing which is now part of
the administrative record casts doubt on the VE's conclusion that
plaintiff could perform the job duties of a cashier II. These

Page 29 - OPINION AND ORDER

circumstances justify reversal of the ALJ's finding of non-disability.

This court applies a three part test to determine whether the case should be remanded for further proceedings, or to calculate and award benefits. Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014), Vasquez v. Astrue, 572 F.3d 586, 593 (9th Cir. 2009); Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). The court should grant an immediate award of benefits when these three conditions are met:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose, (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether plaintiff testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand.

Garrison, 759 F.3d at 1020. After examining the record as a whole, if serious doubts remain regarding whether the plaintiff is disabled, the court may exercise its discretion and remand the case for further administrative proceedings. Id. at 1021; Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).

Here, all the conditions of the credit-as-true rule are satisfied. First, the record has been fully developed and there is no need for further administrative proceedings. Smolen, 80 F.3d at 1292. Second, the ALJ failed to provide legally sufficient reasons for rejecting the opinion of Dr. Belza, and failed to incorporate the uncontradicted hand limitations of Mr.

Kirchoff. Crediting the opinions as true, the ALJ would be required to find plaintiff disabled at Step Five on remand. Garrison, 759 F.3d at 1022; Holohan, 246 F.3d at 1211. This is the second time the matter has been before the court, and the second time the Commissioner has failed to adequately support its decision to deny DIB. Plaintiff has not worked since 1999, is 63-years-old, and filed for benefits roughly eight years ago. Further delay in awarding benefits is not reasonable. See Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004)("Remanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand.")(internal quotation omitted).

Analyzing the evidence in the record, plaintiff's RFC should have reflected less than light-level lifting and carrying, and a limitation of only occasional standing. The RFC should have further reflected a limitation of only occasional grasping with the left hand. Because plaintiff has both exertional and nonexertional limitations, the ALJ should have begun his step five inquiry by consulting the Grids. Under the Grids, plaintiff is disabled and eligible to receive DIB as a matter of law as of

July 18, 2001.[9]

## CONCLUSION

For the reasons stated, the decision of the Commissioner denying plaintiff's application for DIB is REVERSED and REMANDED for immediate payment of benefits consistent with this opinion.

IT IS SO ORDERED.

Dated this 22ND day of April 2015.


Ann L. Aiken
United States District Judge

_____

[9] As mentioned previously, plaintiff reached his 50th birthday on this date, thus becoming a person "closely approaching advanced age" under the Grids. Tr. 140; 20 C.F.R. Part 404, Subpt. P, App. 2.